Harland HAHN and Caroline Hahn,
Plaintiffs-Appellees,

v.

Lloyd A. BECKER and Madison County Mutual Automobile Insurance Company, Defendant-Appellants.*

No. 77–1761.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 1978.
Decided Jan. 22, 1979.

\* *Editor's Note:* The opinion of the United States Court of Appeals, Tenth Circuit in *United States v. Stober* published in the advance sheets at this citation (588 F.2d 768) was withdrawn from bound volume because rehearing is pending.

Michael L. Eckert, Rhinelander, Wis., for defendants-appellants.

Burton A. Strnad, Milwaukee, Wis., for plaintiffs-appellees.

Before CUMMINGS and BAUER, Circuit Judges, and MARSHALL, District Judge.*

MARSHALL, District Judge.

This is the second appeal in this diversity, snowmobile-automobile, personal injury action in which the District Court entered judgments in favor of plaintiffs Harland Hahn and his wife Caroline in the amounts of $179,028.10 and $65,000 respectively. See *Hahn et al. v. Becker et al.,* 551 F.2d 741 (7th Cir. 1977). Thirty thousand dollars of each judgment was entered against defendant Madison County Mutual Automobile Insurance Company under Wisconsin's direct action statute. The balances of the judgments, $149,028.10 for Harland Hahn and $35,000 for Caroline Hahn, were entered solely against defendant Lloyd A. Becker. Both defendants purport to appeal through the representation of a single lawyer urging that (1) the evidence was insufficient to support any verdict for plaintiffs, (2) the amounts of the verdicts were excessive, (3) the trial court erred in ruling on certain expert testimony, and (4) in any

---

* The Honorable Prentice H. Marshall, United States District Court for the Northern District of Illinois, is sitting by designation.

event, Madison County Mutual Automobile Insurance Company's liability was limited to the $30,000 judgment entered against it in favor of plaintiff Harland Hahn. Before considering the merits of these assertions we must address a question of the scope of our review.

The case was tried to a jury which returned verdicts in favor of the plaintiffs on April 30, 1975. The verdicts found defendant Becker's negligence to have been 65% of the cause; plaintiff Harland Hahn's to have been 35%. The verdicts assessed Harland Hahn's total damages at $275,427.85 and Caroline Hahn's at $100,000. On May 1, 1975, at the direction of the trial judge, the following judgments were entered on the verdicts: for Harland Hahn, 65% of $275,-427.85 or $179,028.10, $30,000 of which was entered against Becker and Madison County Mutual jointly and severally and $149,-028.10 of which was entered solely against Becker; for Caroline Hahn, 65% of $100,000 or $65,000, $30,000 of which was entered against Becker and Madison County Mutual jointly and severally and $35,000 of which was entered solely against Becker. On May 9, 1975 defendants filed with the Clerk of the District Court a motion for judgment n. o. v., a motion for a new trial, and a motion to set aside the judgments. The motions were not served until May 23, 1975. Plaintiffs responded to them on June 30, 1975 with a motion to deny on the ground that defendants had failed to comply with the service requirements of Rules 50(b) and 59(b) and (e), F.R.Civ.P. On January 22, 1976 the District Court ruled that it had no jurisdiction to consider the post-trial motions because they had been served more than ten days after entry of judgment. Defendants appealed. This court affirmed the District Court's order with respect to the Rule 59 motions for a new trial and to set aside or amend the judgments but reversed with respect to the Rule 50(b) motion for judgment n. o. v. holding that it was timely under that rule and directing the District Court to rule upon its merits. *Hahn et al. v. Becker et al.,* 551 F.2d 741 (7th Cir. 1977).

On June 21, 1977 the District Court in an unpublished memorandum order considered and denied defendants' Rule 50(b) motion for judgment n. o. v. Defendants then filed a timely notice of appeal from the judgment of May 1, 1975 and the order of June 21, 1977 denying their motion for judgment n. o. v.

 Plaintiffs maintain that the only question open to review is the sufficiency of the evidence. They base this contention on the fact that defendants' only timely post-trial motion was the Rule 50(b) motion which raised only the question of the sufficiency of the evidence. But the appeal is from the judgments, not from the order denying the post-trial motion. *Hennessey v. Schmidt,* 583 F.2d 302 (7th Cir. 1978). A timely post-trial motion tolls the time for filing the notice of appeal. An untimely one does not. On the prior appeal this court held that the Rule 50(b) motion was timely and directed that it be considered. When that motion was denied on the merits, defendants' time to appeal from the judgments commenced to run anew. A timely appeal has been perfected and the entire record is here for review of those alleged errors which were adequately preserved in the trial court. Thus the inquiry is to what extent were timely post-trial motions necessary to preserve the alleged errors which defendants seek to have reviewed. The answer to the inquiry varies depending on the particular error urged.

## I. *Sufficiency of the Evidence*

There is no question that defendants adequately preserved the question of the sufficiency of the evidence by timely motions for directed verdicts and judgments n. o. v. Rule 50(b), F.R.Civ.P.

On the morning of March 10, 1972 at about 11:00 a. m. plaintiff Harland Hahn was operating a snowmobile in a westerly direction on a snowmobile trail in Vilas County, Wisconsin. He approached Rudolph Road, an improved north-south highway in the county. Plowed heavy snow had caused snowbanks of five to six feet on

both sides of Rudolph Road. Hahn went to the top of the snowbank on the east side, looked to the south (his left) and to the north (his right) and observed no vehicles. He started down the bank. When he was about a third of the way down he observed defendant's car on the crest of a hill to the south (Hahn's left) headed in a northerly direction. Hahn tried to stop the snowmobile, but it slid down the bank onto the plowed surface of Rudolph Road about four feet into the northbound lane.

Rudolph Road had been plowed smooth to a width of about fifteen feet but it was snow-packed. Harland Hahn testified that he waved his arms at the oncoming vehicle, which he testified was going about fifty miles an hour, and tried to indicate that it should go around him to its left, i. e., into the southbound lane. The oncoming vehicle did not do so. It proceeded in a straight course striking Hahn and his snowmobile, throwing Hahn an undescribed distance to the north, the snowmobile 24 to 30 feet to the north on top of the snowbank and debris from 24 to 84 feet north. Hahn was seriously injured and he brought this action for those injuries. Mrs. Hahn joined in the action as a plaintiff seeking damages for loss of companionship and services.

For his part defendant Becker testified that he did not see plaintiff until he was only two car lengths away and that he was driving only twenty-five miles an hour. On deposition, however, Becker had testified that he first saw plaintiff as he started down the hill to the south of the point of impact.

The jury in a comparative negligence verdict found that defendant Lloyd A. Becker was 65% negligent and plaintiff Harland Hahn 35% negligent.

■ Defendants maintain that plaintiff Harland Hahn owed the right-of-way to defendant Becker under § 350.02(2)(a) of the Wisconsin Statutes and that he was guilty of negligence as a matter of law. However, the Wisconsin Supreme Court, whose decisions control in this diversity case, has held in situations similar to this that despite a right-of-way statute the assessment of comparative negligence is properly the function of the jury. *Smith v. St. Paul Fire & Marine Insurance Co.,* 56 Wis.2d 752, 203 N.W.2d 34 (1973); *Western Casualty & Surety Co. v. DeSmidt,* 50 Wis.2d 672, 184 N.W.2d 848 (1971). In light of plaintiff's testimony that defendant was travelling at a rate of fifty miles an hour, failed to slow down or heed plaintiff's effort to direct defendant around plaintiff's stopped snowmobile, all corroborated by the distance the snowmobile and debris were thrown by the impact, we hold that the jury's comparative verdict was fully supported by the evidence.

## II. *Excessive Verdicts*

Defendants also contend that the gross verdicts of $275,427.85 and $100,000 reduced by the comparative negligence ratio to $179,028.10 and $65,000 were excessive and the result of passion and prejudice.

■ The scope of review in civil cases is limited to those errors adequately preserved in the trial court. The only vehicle by which questions of excessiveness or inadequacy of verdicts can be submitted to the trial court is a motion for new trial. That motion is addressed to the trial court's discretion, and on appeal the scope of review is limited to whether the trial court abused its discretion in ruling on the motion. *Bucher v. Krause,* 200 F.2d 576, 586–7 (7th Cir. 1952), *cert. denied,* 345 U.S. 997, 73 S.Ct. 1141, 97 L.Ed. 1404. Absent a timely motion for new trial and the trial court's ruling thereon this court may not review the alleged excessiveness of the verdicts. *Panger v. Duluth, Winnipeg and Pacific Ry. Co.,* 490 F.2d 1112, 1118 (8th Cir. 1974); *Ryen v. Owens,* 144 U.S.App.D.C. 332, 333–4, 446 F.2d 1333, 1334–5 (1971); *Baker v. Dillon,* 389 F.2d 57, 58 (5th Cir. 1968); 6A Moore's Federal Practice, ¶ 59.14[1] at p. 59–265 (2d ed. 1974). Because defendants' Rule 59(b) motion for new trial was not timely the question of excessiveness of the verdicts is not open for review.

### III. *Evidence Ruling*

■ Plaintiffs contend that defendants are foreclosed from urging this alleged error because their motion for new trial was untimely. But the question of the evidence ruling was adequately presented to and ruled upon by the trial judge during the trial. Unlike the question of excessive verdicts which can be preserved only by a motion for new trial, this alleged error is available for review without a representation of it to the trial court by way of a post-trial motion. *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 253–5, 61 S.Ct. 189, 85 L.Ed. 147 (1940); *Neely v. Martin K. Eby Construction Co.,* 386 U.S. 317, 327, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1917); 6A Moore's Federal Practice, ¶ 59.15[3] at p. 59–281 (2d ed. 1974).

Defendants called a surveyor to testify to the distance that Harland Hahn could have seen to the south from the intersection of the snowmobile trail and Rudolph Road if Hahn were seated on his snowmobile or standing on the running boards of his snowmobile at the shoulder of the road. The surveyor's study and calculations were made when there was no snow on the ground and particularly no five or six foot embankment of snow as existed on the day of the collision. Defendants maintain that the trial court erred in commenting in the presence of the jury on the relevance of the testimony.

■ The expert's testimony was challenged by plaintiffs from the standpoint of admissibility and credibility. Counsel for both parties engaged in extensive colloquy in the presence of the jury. In essence the testimony was that the higher a person's eyes at the intersection of the snowmobile route and the shoulder of the road the farther south along the road he could see. The purpose of the testimony was to persuade the jury that Harland Hahn could or should have seen Lloyd Becker's oncoming Chevrolet before Hahn testified that he had seen it. The expert witness acknowledged that the application of his computations to the particular circumstances which existed at the time of the occurrence in question would have been speculative. Plaintiff moved to strike all of the testimony. The trial judge ruled on the motion in the presence of the jury as follows:

"As far as the sight line is concerned, yes, it seems to me that there are some basic principles involved there that the lower you are, that you can't see as far; and that if you're up you can see farther; but as far as the testimony of the sight line is concerned, other than to understand the basic principle, and the witness himself speculated, admits some of it's speculation, I think that has to be disregarded and struck, but I don't think the whole thing should be struck.

"The Jury's heard the discussions back and forth here from both counsel. That we'll leave in. They have to give it the weight they think it is entitled to in view of the discussions of counsel, but other than the matter of general principle on the sight line, that will be struck, the testimony here, was that the man standing and these various things, but the basic principle I think is there.

"So, you may use that graph [a diagram prepared by the witness] for such value as you think it's entitled, disregarding all that which is speculative and does not seem to apply in this case as I've tried to outline it to you generally. It's going to be hard to sort through that, but there is some help in it and some that is not. "As far as the measurements are concerned, the snow and so forth, perhaps this will be of some value to you in judging those and understanding those, that other testimony. Some of this is based on hypotheticals.

"So, along those lines, gentlemen, I don't know how else to segregate it. Some of it's valuable. Some of it's not. Let the Jury do the best they can with it." Tr. 154–55.

In all of the circumstances we believe the trial court properly handled the situation with no prejudice to defendants. The other testimony was clear with regard to the height of the embankment and plaintiff's position on it. There was no reason why defendants could not have requested their expert to make precise calculations on the basis of assumed heights. This they chose not to do, proceeding instead to argue from sight lines constructed from the edge of the highway without any snow. The relevance problems were obvious. The trial court properly left the probative value of the testimony to the jury.

### IV. Separate Judgments Against Insurance Carrier

Defendant Madison County Mutual Automobile Insurance Company alone urges that the trial court erred in entering separate judgments in the amount of $30,000 in favor of both plaintiffs and against it, asserting that Mrs. Hahn's loss arises from the same bodily injury as Mr. Hahn's loss and that the terms of the policy preclude recovery for both of them. Plaintiffs again assert that consideration of this question is foreclosed by defendants' failure to present it by way of a timely post-trial motion.

Clearly defendant Madison's present contention was a fit subject for a Rule 59(e) motion to amend or alter the judgments. But as this court held in the first appeal, defendants' Rule 59(e) motion was not timely perfected. We hold that Madison should be held to a timely submission of this question to the trial court before it will be permitted to urge it on appeal.

The case was tried under a stipulation that the policy limits were $30,000 per person, $60,000 per accident. One lawyer represented both Becker and Madison. Madison now seeks to be relieved of the stipulation. And its counsel, who has also appeared here for both Becker and Madison, seeks to be excused from his professional responsibility to Becker. If Madison is relieved of the $30,000 liability to Mrs. Hahn, Becker will be liable for it. On oral argument we inquired of counsel regarding this conflict of interest. He responded that he was certain that Becker would have no objection to the position he was advancing in behalf of Madison. But there is nothing of record to that effect.

Thus, the relief which Madison seeks, while simple and straightforward on its face, is dependent upon complex facts which are not of record: the circumstances which might give rise to relief from the stipulation and Becker's position regarding and protection from the conflict of interest which has arisen between him and his lawyer and his insurer. The Rule 59(e) motion to amend the judgments was the vehicle by which Madison could have developed a record which would enable us to determine if the trial court erred in entering the judgments it entered. Madison's failure to timely move under Rule 59(e) forecloses our consideration of this question.

The judgments are AFFIRMED.